Good morning, may it please the Court. My name is Patrick Regan, and along with Jacqueline Cochlea, who's at council table, we represent the appellants in this case. Mrs. LaClair, who's appearing both individually and as the personal representative of her husband's estate. The fact that I'm standing here first means that at some level I failed in the court below to convince the court, convince Judge Mazzetti, of the merits of this particular issue, that this was a subsequent intervening cause that broke the chain of causation from the first one. There's a lot, as you know from looking at the briefs, the parties agree on virtually everything in this case, except a couple of issues. We reached a settlement, and the settlement provided for one payment under one scenario, and a different payment under a second scenario. We agree that the controlling case is the Pitway case, a case that I'm very familiar with. That was my case. I was the counsel for the plaintiffs in that case for 13 years. In fact, I kept losing. I don't think they thought very highly of their lawyer for many of those 13 years, but ultimately we prevailed. So I know this law. I may not know other issues, but I know this law. And where I believe, the one thing that I would like to focus, and where I think that I failed to adequately convey to Judge Mazzetti, is the separate indistinct injury. This is an issue that he does not address in his opinion. And I would refer the court to the medical illustrations and exhibits that are on page 213 and 215 of the joint appendix. And the reason that these are important, these illustrations, page 213, shows the traumatic dislocation that was revealed on the films that were done, the CT films that were done on November 7th, one day after the injury that we're talking about here, the November 6th injury. And then page 215 shows the films that were taken seven days before, on November 1. And in the upper left-hand corner of 215 is the CT scan from November 1. And you don't have to be a radiologist to see that there is no impingement on the spinal cord in that particular instance. When you look at 215 in the upper right-hand corner, and the upper, or sort of the middle, shows the CT from November 4. Just to repeat the chronological history here, the injury, the initial injury was on November 1. Surgery was done by Dr. Powers to repair that on November 3. So what we have on page 215 is before the surgery, what we have on page 213 on the left-hand side is the CT of November 4, which again clearly shows the repair, shows there's no impingement on the spinal cord. When you look in the upper right-hand corner, the CT from November 7th, which is now the morning after the manhandling event on the 6th, you can see a dramatic, at C6, a dramatic This is a separate and distinct injury, and unfortunately, that was an item and an issue that Judge Massetti did not address in his ruling. And we would submit to the court that for all the reasons we've argued and set forth in our brief, that that is clearly erroneous. In looking at the factors that Pitway sets forth that says that it is the gospel under Maryland law for determining a superseding cause, it's really the first two, A and B, that I'm going to discuss today. C, D, E, and F, I believe, are very straightforward. And at some point, I would submit to the court that the plain reading of the restatement, the plain reading of Pitway, is what should control here. When you look at, for instance, just picking item number four, or item number D, the fourth element, the fact that the operation of the intervening force is due to a third person's act or his failure to act. Clearly, that results from what happened on November 6th. Judge Massetti doesn't expressly say that, but the plain reading of that indicates that that was caused by the third person. So the first person would be, obviously, the tortfeasor on November 1, and the third person is the tortfeasor on November 6. And what seems to have gotten lost in the shuffle throughout this, when Judge Massetti talks about foreseeability, is the harm. And you'll see that factor number two, B, the fact that its operation, and it refers, obviously, to the third person, its operation or the consequences thereof, or the consequences thereof, appear after the third person's act or his failure to act. And that's why it's highly extraordinary there, but I don't think it matters much in the context of this case. Because what we have, what the record demonstrates, is that we have the consequences of this repositioning in bed were so dramatic to cause that dislocation of the spinal cord that none of the surgeons, the record is uncontradicted on this. We have the neurosurgeon who did the surgery, the first and second surgery, Dr. Powers. We have the neurosurgeon who did the third surgery, Dr. McGrail. And the expert, Dr. McGilner, collectively, they have never seen this in their entire experience and are not aware of it, any single reported instance in the medical literature. And collectively, they have 60 or 70 years of experience as neurosurgeons. So we would argue that, first of all, if the issue before the court, that this court believes is dispositive, is was the need for orderlies, for technicians to come and assist Mr. LeClaire in getting out of bed and getting to the bathroom and getting back in bed, if that's the issue that we're going to be dispositive in terms of foreseeability, then you should tell me to go home and we should all have an early lunch. Because I agree that's foreseeable. I absolutely agree. And I would submit to you that Judge Mercedi put undue influence and repeats it a number of times in his ruling that it was foreseeable that under the facts of just having had surgery and just having had the catheter removed that this gentleman, who was in his mid-80s at the time, would require assistance to and from the bathroom. And I agree. It is foreseeable. Right. Your whole case boils down to the manner in which the patient was handled. Yes, Your Honor. Isn't that correct? That's absolutely right. And that was not foreseeable under Maryland law? Correct. And the record is uncontradicted from not only the surgeon, which Judge Mercedi correctly points out, is defending his treatment, defending his initial surgery on November 3, saying, I got very good purchase, which is the term they used. He said it was like screwing into mahogany, even though this was someone who, because of his age, might otherwise had difficulty. He said it was like screwing into mahogany. So it's that, yes. It's the same thing. The A talks about the fact that the intervention brings about a harm different in kind from that which otherwise would have resulted from the actor's negligence. Again, he was set to be discharged the following day. November 7, he was supposed to go home. Dr. Powers had seen this patient on the morning of November 6 and had said, you're going to go to a rehab facility for a week or two. He said, you're going to go. You're fine. You can be discharged from the hospital. Let's suppose, and I knew you were anticipating a hypothetical, let's suppose after this initial surgery, they take the patient back to his room and this occurs. As they're transferring him from the gurney that he's been on in the operating room to his bed and this occurs, this injury occurs. Is that an intervening act? I think that in that instance, if they drop him or something like that, that would probably be, I would have a different argument today. I would not, you know, I would. How do you make the distinction? How do I make the distinction? Because I think that that is not so unusual, you know, the taking him from a gurney and transferring him. Here, they're forcing him into, up against a bed for a long enough period of time that he cries out, his wife finally says stop, and then he immediately starts to lose sensation in his left arm. So it was not an isolated one-second event. This occurred over a period of... Let's suppose this exact same thing happens when he comes right out of surgery and they're putting him in his bed, in his room. The exact same thing happens. On the same facts, with the same testimony from the witnesses, then I would make the same argument. It's not an intervening act? No, I would argue that it is. It is. I'd make the same argument that it is because it's the consequences thereof. This whole, the issue before the three, the judge panel today is on that issue, the consequences. And I would say that if everything else is the same, whether it happens an hour after the initial surgery or whether it happens seven days later or seven weeks later, if the consequences are not foreseeable, then under the pitway test, under the clear established law of the jurisdiction, that's what matters. If it's, as I understand it, you're saying this second handling of him in the hospital is a separate and distinct harm that was not foreseeable, is that right? Correct. Then why did you seek damages from PTSM for this purported separate harm in your first complaint? Excellent. I know. Excellent. Your Honor, to be sure, and this is in the, you'll see in the transcript before the judge and in all our pleadings. We were, the initially, our position was that this is simply a foreseeable consequence of injuring someone on November 1st and requiring surgery, and this is a complication. We proceeded with our case until one very important thing happened, and that is Dr. Powers testified in his deposition. The lawyers for PTSM deposed Dr. Powers, and I sat there and heard him describe that. Now, I mean, you could, I suppose, fairly criticize me for not talking to Dr. Powers prior to this time, and I would accept that criticism because I was criticizing myself for it. But the point of the matter is, when Dr. Powers gave his deposition testimony, that shot the heck out of our argument because it was clear to us at that point that our, the whole premise that we had been proceeding on was incorrect, factually. Based on that one doctor, there were other doctors that took a completely opposite view that this would have been foreseeable. Well, with all due respect, Dr. Powers was the one who was in there, and he gave very compelling testimony about what happened and the fact that there was absolutely, I mean, it was very difficult to contradict his testimony through a witness, through an expert, a hired expert, that I went in on November 3, there was absolutely no spinal cord injury. I went in on November 7, and there was a spinal cord injury. I mean, so that was, that was the that's what changed the dynamic from us, and from that moment forward, we changed. We were forced to. I mean, you know, some cases get better as the litigation goes on, and some get worse, and this one got worse at least from that perspective. And so, we, that case was pending before Judge Mecedi as well. And at that point, you know, we couldn't change those facts. I mean, it, I see that my stop sign is on, but that's absolutely right. We were forced to do that. We did claim it originally, and the settlement agreement, which is part of the joint appendix, clearly indicates what we were settling and what we weren't settling. You've got some time remaining. Thank you. Let's hear an argument on behalf of the hospital. May it please the Court? Mike Bonasowski on behalf of the appellee. I must admit that having heard appellant's argument, I'm now a little confused. I'm not clear, as we stand here today, whether appellant's position is that no reasonable fact finder could conclude that the intervening act was foreseeable or not foreseeable, or if his position is still that the harm from the intervening act. I think he's saying the manner in which the intervening act was conducted was not foreseeable. So his contention, as you understand it then, is that the intervening act was not foreseeable. If that's what you understand, that's not the position he took in front of Judge Mercedi. If we look specifically at the joint appendix volume two, page 709, Judge Mercedi asked him specifically those questions, and I'll read it, page 709 starting at line 20. After Judge Mercedi had tried to fully understand this intervening act and this manhandling event, again it's page 709 beginning at line 20, essentially what Judge Mercedi said to Mr. Riggin, that's why you've got to convince me, quote, that somehow this idea of routinely helping, the objective anyway was to put this man back in bed. That's not unforeseeable. What line are you reading on? I'm sorry. What line? 20. 20, okay. On page 7? 709. Okay. Of the appendix. And Mr. Riggin was, his answer was right. The fact someone might come and help this gentleman back to bed was foreseeable. Clearly you want to try and help a man who has had surgery and is ready, and a catheter is ready. Court, after a delicate operation, which you have to admit, where at best the person who performed the surgery is saying he's on the mend, on the full mend, so why isn't any of that foreseeable then, given the delicate nature of the surgery, that they might mess up, might do it badly? His response, because the nature of the harm is not foreseeable. And then appellant went into his own argument that what really separates this case, that what was really unusual about this case, is that the harm was so intense, that the harm was so different, that the harm was so severe, and he'd spent a good deal of time here today with you going over the imaging studies contained in his extract. His position today, as I hear it, is different specifically than what he told Judge Merced. And here's the reason why. Plaintiff relies heavily on Pitway. And I don't disagree that Pitway gives a good recitation of the law on both proximate cause, which is very important in this case, but not addressed at all in appellant's argument, as well as the law of intervening, superseding cause. And Pitway does in fact say that both proximate cause, the legal harm analysis, is a foreseeability analysis, and also says that when you deal with superseding, intervening cause, it's also a foreseeability analysis. And then Pitway talks about those six factors that are contained at section 422 of the restatement. And here's what appellant doesn't address. Section 442 of the restatement, both in Pitway and every other case in Maryland addressing it, specifically says that it is qualified by section 4... I'm going to misstate this. Let me make sure I get it right. 447. If you read Pitway specifically, after discussing the four, the six factors in 442, it says, but look, this whole thing is qualified by section 477. And here's what 477 says. The fact that an intervening act of a third person is negligent in itself, or is done in a negligent manner, does not make it a superseding cause of the harm to another which the actor's negligent conduct is a substantial factor in bringing about if, and here's the key, the actor at the time of his negligent conduct should have realized that a third person might so act. Talks about the intervening act, not the harm resulting from the act. Or, it says, again, it's not a superseding cause if a reasonable man, the third person was done, would not regard it as highly extraordinary that the person had so acted. Again, the focus is on the intervening act, not the harm. There is no such thing as a superseding intervening defense. It never is an issue if the health care provider in this case, the subsequent tortfeasor, doesn't do something to make the underlying injury worse or create some new injury. There's no tort. Every case, there's some new tort, there's some new injury, or there's no tort against the health care provider. And there's no claim to bring, and you're not talking about superseding intervening cause. You don't focus on the harm in this type of case. You focus on the intervening act. Maryland law has said time and again that the general rule is quite simple. I, as the original tortfeasor, if I cause someone injury, and I send that person to the hospital because of my negligence, and the health care provider screws up and does something negligent and makes it worse, I, as the original tortfeasor, am responsible not only for the injuries that I caused, but everything that the subsequent health care, subsequent negligent health care provider did to make it worse. And the reason is very simple. It's a foreseeability analysis, and what the court has concluded is that it's foreseeable that that might happen. You placed the victim in a position of danger by sending him to the hospital. You created the force. You set in force the motion that put him in the hospital. If something bad happens while he's there, it's your fault. That's what this case is about. Plaintiff doesn't really disagree that the intervening act was foreseeable. He says it specifically on page 709 and 710 of the appendix. The law on this issue is clear if the intervening act was foreseeable. It's foreseeable. You cannot have a superseding cause, regardless of the injury. There's no dispute of any real material fact, which is why I originally couched the motion at the lower level as one where I'm entitled to a judgment on this issue as a matter of law. I didn't think, and I still don't, there's any real, true, factual dispute that should be made. I don't really think that when you consider the other issues in the case, that most of it really amounts to a hill of beans. That is the primary issue, and that is the issue that Judge Massetti did a great job of discussing, of questioning appellants counsel during the hearing. If I remember rightly, he went through the event with Mr. Reagan in great detail, tell me exactly what happened, tell me exactly what your client contends occurred, and after doing that, what Mr. Reagan essentially said is, the act wasn't, the act was foreseeable. What really separates this case out is the harm, and then he spends a great deal of time talking about how the harm is different. His entire focus is incorrect. Unless you have any questions for me, that's my argument. Thank you. Thank you. Reply. Maryland law requires that there be an analysis of a separate and distinct injury. This is not something that is made up by Reagan as he goes into court. That requires, as part of the determining factor, we have never disputed that 447 is part of the analysis, but there is a difference. The act is really, if you want to break it down, the act is two things here. The act is assisting someone to the bathroom and back to the bed. That's one act. The second act, which really deals with the harm, is how we've couched it both at the trial court level and at this level, but if you want to call it an act, that's fine, but the act there is repositioning in such a manner that it causes a spinal cord injury that's never been reported in the literature. And if you read it, and I won't take the court's time unless you'd like me to go through 447, but if you read 447, for instance it says, the actor at the time of his negligent conduct should have realized that a third person might so act. That's factor A, first of the three. Then it goes on to say or, and then a second and then or. Well, for each one of those, if you look at it through the prism of could anybody have reasonably foreseen that someone would act in such a manner to cause a spinal cord injury, I would submit to you the record is clear. It's uncontradicted. This has never been reported in the medical literature. How can it be foreseeable? Is it foreseeable that someone would walk someone to the bathroom and assist them back getting into bed? Absolutely. But you can't, it's not that simple. The analysis doesn't mean because of the fact that you helped them to the bathroom and they got injured in the process of repositioning, all of a sudden it swept under the rubric of foreseeability. But your opposing counsel is saying the nature of your argument has morphed from what it was in the trial court that in that discussion at 7, 9, 10, and 11, you were talking about the consequences of the act being extraordinary rather than the manner in which the act was conducted. Could you clarify that for us? Absolutely, your honor. And that's why I said right now, our argument has never changed. We've always focused on the consequences and that's why I said maybe it's easier to focus on two acts. Okay, the one act that we agree and said to Judge Mecedian, the bottom of page 709 at line 24, yes, we agree one act is foreseeable, which is assisting someone to and from the bathroom and getting into bed. I never couched it in terms of the second act because the pit way talks about or the consequences and that to us is the operative issue or the consequences. But it is fair to say, it's fair to characterize that as a second act. So one part of the act is foreseeable, the second part, which is the causative part. Right, but he's saying on 7, 10 at line 9, you're saying because the nature of the harm is not foreseeable. And that's what we're referring to or the consequences, your honor. And I apologize if I wasn't as articulate as I should have been in that. But when I say the nature of the harm is not foreseeable, I am referring to or the consequences of the line in pit way on page, pit way page 771, when it talks about or the consequences. So it's pit way at 973, a second 771, where they talk about the consequences. So my reference to the nature of the harm is synonymous to the consequences. Now, if you want to break this down into two acts, I've never felt it necessary, but it can be because the consequences are from the final act, if you will. And I've never said at any point today before Judge Mercedi or in any pleadings that that is foreseeable. We don't think it is. We think the record is clear that that harm, that consequence, that act, any of those are synonymous for that. It's incomprehensible that it can be foreseeable if it's never been reported before in the medical literature. And there was never a determination by the trial court as to whether there was a separate and distinct injury, which is the linchpin of our argument today. That's where we believe the court erred and relied too much on the foreseeability argument and Judge Mercedi never addresses the foreseeability of the harm. It gets lost in the shuffle, not intentionally, of course, inadvertently. I'm being told to sum up, so if there are questions, I'll be happy to. Any further? I think we understand your argument. Thank you. I'll ask the clerk to adjourn court and then we'll come down and begin. This honorable court stands adjourned until tomorrow morning at 8.30. God save the United States.
judges: William B. Traxler, Jr., Barbara Milano Keenan, Stephanie D. Thacker